IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON WHO SUBSCRIBE TO CERTIFICATE NUMBER NA125383 ) ) ) | ) ) ) CASE NO. |
| Plaintiffs, ) | ) |
| v. ) | ) JUDGE: |
| WESTERN EXPRESS INC. ) | ) JURY DEMAND ) |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Those Certain Underwriters at Lloyd's, London who subscribe to Certificate Number NA125383, as and for their Complaint seeking declaratory relief respectfully set forth and allege as follows:

## INTRODUCTION

1. This is an action to determine the rights and obligations between the plaintiffs and the defendant with regard to the thefts of two shipments of copper sheets that were being transported by the defendant from Arizona to Connecticut.

## THE PARTIES

2. Plaintiffs are insurance business entities organized and existing under the laws of Great Britain and Wales, with their principal place of business located at 1 Lime Street, London, England EC3M 7DQ.

3. Defendant, Western Express Inc., is, upon information and belief, a Tennessee corporation with its principal place of business at 7135 Centennial Place, Nashville, Tennessee. Its registered agent is Roland Lowell at 7135 Centennial Place, Nashville, Tennessee.

## JURISDICTION AND VENUE

4. This is an action for declaratory judgment, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, for the purpose of determining a question of actual controversy between the parties as hereinafter more fully appears, and pursuant to 28 U.S.C. §1332(a) because there is complete diversity between the plaintiffs and defendants and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest. Plaintiffs in this case are citizens and/or subjects of a foreign country and the defendant is a citizen of the State of Tennessee.

5. Venue is proper because the insurance policy that is the subject of this controversy was issued to defendant in Nashville, Tennessee and the defendant is a business entity incorporated, domiciled and/or doing business at 7135 Centennial Place, Nashville, Tennessee in the United Stated District Court, Middle District of Tennessee.

## FACTS

6. Plaintiffs, pursuant to Certificate No. NA125383, provide Motor Truck Cargo coverage to the defendant for the period June 15, 2012 to June 15, 2013. Coverage is provided in the amount of $150,000 any one truck and $300,000 any one loss. Coverage is subject to a $10,000 deductible for each and every accident or event. A true and correct copy of Certificate No. NA125383 is attached hereto as Exhibit 1.

7. Defendant submitted two claims involving the theft of shipments of copper sheets that were being transported from Freeport McMoran in Morenci, Arizona to Freeport McMoran in Norwich, Connecticut. The thefts occurred on June 17, 2012 and July 8, 2012.

8. The June 17, 2012 theft loss occurred at the Flying J Truck Stop in Clearbrook, Virginia.

9. According to the bill of lading, defendant's driver, Bernell Blakes Jr., was transporting 44,140 pounds of Cathode-Morenci Central PDMI, or copper sheets, on a flat-bed trailer.

10. Defendant's driver parked his tractor trailer at the Flying J Truck Stop on June 17, 2012 and then left it unattended while he went inside to shower and purchase food.

11. The tractor trailer was not garaged in a building at the time of the theft loss on June 17, 2012.

12. The tractor trailer was not parked in a fully enclosed yard which was securely closed and locked at the time of the theft loss on June 17, 2012.

13. The tractor trailer was not under constant surveillance at the time of the theft loss on June 17, 2012.

14. The tractor trailer was not on a guarded lot at the time of the theft loss on June 17, 2012.

15. Defendant's driver left a key in the ignition of tractor when he went inside to shower and purchase food on June 17, 2012.

16. When defendant's driver returned to the location where he parked his tractor trailer on June 17, 2012, he discovered it had been stolen.

17. The tractor involved in the June 17, 2012 theft was recovered, but the trailer and the cargo of copper sheets remains missing.

18. The tractor involved in the June 17, 2012 theft did not reflect any evidence of forcible or violent entry and the defendant did not make any repairs to the tractor following this incident.

19. The July 8, 2012 theft loss occurred at a truck stop in Raphine, Virginia.

20. According to the bill of lading, defendant's driver, Jared Rizzo, was transporting 44,480 pounds of Cathode-Morenci Southside PDSS, or copper sheets, on a flat-bed trailer.

21. Defendant's driver parked his tractor trailer at the truck stop on July 8, 2012 and then left it unattended while he went inside to eat.

22. The tractor trailer was not garaged in a building at the time of the theft loss on July 8, 2012.

23. The tractor trailer was not parked in a fully enclosed yard which was securely closed and locked at the time of the theft loss on July 8, 2012.

24. The tractor trailer was not under constant surveillance at the time of the theft loss on July 8, 2012.

25. The tractor trailer was not on a guarded lot at the time of the theft loss on July 8, 2012.

26. When defendant's driver returned to the location where he parked his tractor trailer on July 8, 2012, he discovered it had been stolen.

27. The tractor involved in the July 8, 2012 theft was recovered, but the trailer and the cargo of copper sheets remains missing.

28. The tractor involved in the July 8, 2012 theft did not reflect any evidence of forcible or violent entry and the defendant did not make any repairs to the tractor following this incident.

## **THE INSURANCE POLICY AT ISSUE**

29. Plaintiffs, pursuant to Certificate No. NA125383, provide Motor Truck Cargo coverage to the defendant for the period June 15, 2012 to June 15, 2013.

30. The policy contains the following language:

. . .

**INSURING AGREEMENT**

In consideration of the premium paid hereon and the particulars and statements contained in the written Proposal, a copy of which attaches hereto, which particulars and statements are warranted by the Insured to be true and are agreed to be incorporated herein, the Underwriters hereby agree to indemnify the Insured, named in the schedule, for ALL RISKS OF PHYSICAL LOSS OR DAMAGE FROM AN EXTERNAL CAUSE to lawful cargo in and/or on a truck whilst in the Insured's care, custody or control in the ordinary course of transit, including loading and unloading, within the contiguous states of USA, the District of Columbia and Canada. THIS INSURANCE BEING SUBJECT TO ALL THE PROVISIONS, EXCLUSIONS, DEFINITIONS, TERMS AND CONDITIONS CONTAINED IN THE FOLLOWING WORDING.

. . .

**EXCLUSIONS**

This insurance does not insure the liability of the Insured for: -

. . .

k) Any losses from unattended trucks while in the ordinary course of transit unless:

   a) The truck is garaged in a building or parked in a fully enclosed yard which is securely closed and locked, or the truck is under constant surveillance, or on a guarded lot <u>AND</u>

   b) The truck has all the openings closed and securely locked and keys removed, in so far as local regulations permit.

. . .

m) Loss or damage otherwise recoverable hereon unless:

   i) the trucks are owned by the Insured, or leased pursuant to a written lease by him for his exclusive use, AND providing the trucks are operated exclusively by his own full time salaried employees who have satisfied the employee references condition (General Condition no. 4) below.

. . .

**DEFINITIONS**

. . .

c)  The word *unattended* shall mean: -

  A truck which has been left without a responsible person whose duty is to drive, guard, or attend the truck being either on, in, or within ten yards of the truck.

. . .

**GENERAL CONDITIONS**

. . .

4)  SPECIAL CONDITION – It is a condition precedent to Underwriters' liability under this policy that satisfactory references are obtained from reliable sources, check and records kept in respect of all new employees engaged by the Insured after the inception date of this policy. The Insured shall take all reasonable precautions for the protection and safeguarding of the cargo and use such security devices as may be specified in the proposal form, and all vehicles, trailers, containers and security devices shall be maintained in good order. Such devices shall be used at all times and shall not be varied or withdrawn without written consent by the Underwriters.

. . .

14)  MISREPRESENTATION AND FRAUD – This entire Insurance shall be void if the Insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject matter thereof, or, in case of any fraud, attempted fraud or false oath by the Insured, touching any matter relating to this Insurance or the subject matter thereof, whether before or after a loss.

. . .

**OPTIONAL ENDORSEMENTS**

. . .

4)  UNATTENDED TRUCK ENDORSEMENT

In consideration of the additional premium charged, it is hereby noted and agreed that, irrespective of exclusion k, this policy is extended to include losses to cargo directly resulting from forcible and/or violent entry to unattended trucks, subject to such trucks having all their openings closed, securely locked and all keys removed, but the limit of liability under this extension shall be the sum set against paragraph 4 in the optional endorsements schedule page forming page 2 of this form, any one truck.

. . .

## COUNT ONE
### (Declaratory Judgment – June 17, 2012 Theft)

31. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 30 as if set forth herein in their entirety.

32. The policy issued to defendant contains the following language:

**EXCLUSIONS**

This insurance does not insure the liability of the Insured for: -

. . .

k) Any losses from unattended trucks while in the ordinary course of transit unless:

    a) The truck is garaged in a building or parked in a fully enclosed yard which is securely closed and locked, or the truck is under constant surveillance, or on a guarded lot <u>AND</u>

    b) The truck has all the openings closed and securely locked and keys removed, in so far as local regulations permit.

. . .

**DEFINITIONS**

. . .

c) The word *unattended* shall mean: -

> A truck which has been left without a responsible person whose duty is to drive, guard, or attend the truck being either on, in, or within ten yards of the truck.

. . .

**OPTIONAL ENDORSEMENTS**

. . .

**4) UNATTENDED TRUCK ENDORSEMENT**

In consideration of the additional premium charged, it is hereby noted and agreed that, irrespective of exclusion k, this policy is extended to include losses to cargo directly resulting from forcible and/or violent entry to unattended trucks, subject to such trucks having all their openings closed, securely locked and all keys removed, but the limit of liability under this extension shall be the sum set against paragraph 4 in the optional endorsements schedule page forming page 2 of this form, any one truck.

. . .

33. Coverage for the June 17, 2012 loss is excluded pursuant to exclusion k) contained in Underwriters' policy.

34. The Unattended Truck Endorsement does not extend coverage for this loss because there was no forcible and/or violent entry to the unattended truck and/or the truck did not have all keys removed.

WHEREFORE, Plaintiffs, Those Certain Underwriters at Lloyd's, London who subscribe to Certificate Number NA125383, request that the Court enter a judgment declaring the following:

1. Coverage does not exist for the loss that occurred on June 17, 2012;

2. Such other and further relief as the Court may deem just and warranted.

## COUNT TWO
### (Declaratory Judgment – July 8, 2012 Loss)

35. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 34 as if set forth herein in their entirety.

36. The policy issued to defendant contains the following language:

**EXCLUSIONS**

This insurance does not insure the liability of the Insured for: -

. . .

k) Any losses from unattended trucks while in the ordinary course of transit unless:

    a) The truck is garaged in a building or parked in a fully enclosed yard which is securely closed and locked, or the truck is under constant surveillance, or on a guarded lot <u>AND</u>

    b) The truck has all the openings closed and securely locked and keys removed, in so far as local regulations permit.

. . .

**DEFINITIONS**

. . .

c) The word *unattended* shall mean: -

A truck which has been left without a responsible person whose duty is to drive, guard, or attend the truck being either on, in, or within ten yards of the truck.

. . .

**OPTIONAL ENDORSEMENTS**

. . .

<u>4) UNATTENDED TRUCK ENDORSEMENT</u>

> In consideration of the additional premium charged, it is hereby noted and agreed that, irrespective of exclusion k, this policy is extended to include losses to cargo directly resulting from forcible and/or violent entry to unattended trucks, subject to such trucks having all their openings closed, securely locked and all keys removed, but the limit of liability under this extension shall be the sum set against paragraph 4 in the optional endorsements schedule page forming page 2 of this form, any one truck.
>
> . . .

37. Coverage for the July 8, 2012 loss is excluded pursuant to exclusion k) contained in Underwriters' policy.

38. The Unattended Truck Endorsement does not extend coverage for this loss because there was no forcible and/or violent entry to the unattended truck and/or the truck did not have all keys removed.

WHEREFORE, Plaintiffs, Those Certain Underwriters at Lloyd's, London who subscribe to Certificate Number NA125383, request that the Court enter a judgment declaring the following:

1. Coverage does not exist for the loss that occurred on July 8, 2012;

2. Such other and further relief as the Court may deem just and warranted.

## COUNT THREE
### (Rescission)

39. Plaintiffs repeat and reallege the allegations in paragraphs 1 through 38 as if set forth herein in their entirety.

40. The application for coverage submitted to Underwriters for the policy requests, in question 18, that the insured give details of its cargo loss experience whether insured or not, for

the past 5 years. The insured responded to that question as follows: "Per files with Tysers." A true and correct copy of defendant's application for coverage is attached hereto as Exhibit 2.

41. Based upon the information contained in the application submitted, Underwriters issued Certificate number NA125383.

42. Underwriters, after submission of the involved two claims, requested the defendant provide additional information regarding its prior loss history; however, defendant refused to provide the requested information.

43. Upon information and belief, the representation made by defendant with regard to its prior loss history was false as it did not contain all of defendant's cargo losses during the previous five years.

44. Upon information and belief, the misrepresentation was made by defendant with the intent to deceive Underwriters.

45. Upon information and belief, the misrepresentation increased the risk of loss.

46. Underwriters relied upon the above misrepresentation to its detriment when it issued the Policy. Underwriters would not have issued the Policy as written had the true facts been known.

47. Underwriters are ready, willing, and hereby offer to return the premium for the policy.

### **JURY DEMAND**

48. Underwriters respectfully demands a jury to hear this matter with the maximum number of jurors allowed at law.

**WHEREFORE**, Plaintiffs, Those Certain Underwriters at Lloyd's, London who subscribe to Certificate Number NA125383 request that the Court enter judgment against the

defendant, Western Express, rescinding ab initio certificate number NA125383 and for such other and further relief as this Court deems proper.

Respectfully submitted,

STITES & HARBISON, PLLC

/s/ Kenneth M. Bryant
Kenneth M. Bryant (TN BPR #12582)
J. Matthew Kroplin (TN BPR #27363)
401 Commerce Street, Suite 800
Nashville, TN 37219
(615) 782-2257
Fax: (615) 742-0737

*Counsel for Those Certain Underwriters at Lloyd's London Who Subscribe To Certificate NA125383*