IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOSE CERTAIN UNDERWRITERS AT LLOYD'S, LONDON WHO SUBSCRIBE TO CERTIFICATE NUMBER NA125383, <br><br> Plaintiffs, <br><br> v. <br><br> **WESTERN EXPRESS INC.,** <br><br> Defendant. | CASE NO. 3:13-cv-00068 <br><br> Judge Campbell <br> Magistrate Judge Knowles <br><br> JURY DEMAND |

**INITIAL CASE MANAGEMENT ORDER**

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.01, the following initial case management order is **ADOPTED**.

1. **Jurisdiction and Venue**

The parties do not contest jurisdiction or venue.

This is an action for declaratory judgment, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining a question of actual controversy between the parties, and pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the plaintiffs and defendants and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest.

Venue is proper because the insurance policy that is the subject of this controversy was issued to defendant in Nashville, Tennessee, and the defendant is a business entity incorporated, domiciled, and/or doing business in Nashville, Tennessee.

2. **Theories of the parties**

   *Plaintiffs' Theory:*

   This is an action to determine the rights and obligations between Plaintiffs Those Certain Underwriters at Lloyd's, London Who Subscribe to Certificate Number NA125383 ("Underwriters") and Defendant Western Express, Inc. with regard to the thefts of two shipments of copper sheets that were being transported by Defendant from Arizona to Connecticut. Underwriters, pursuant to Certificate No. NA125383 (the "Policy"), provide

Motor Truck Cargo coverage to the defendant for the period June 15, 2012 to June 15, 2013. Coverage is provided in the amount of $150,000 any one truck and $300,000 any one loss. Coverage is subject to a $10,000 deductible for each and every accident or event. Defendant submitted two claims involving the theft of shipments of copper sheets that were being transported from Freeport McMoran in Morenci, Arizona to Freeport McMoran in Norwich, Connecticut. The thefts occurred on June 17, 2012 and July 8, 2012.

The June 17, 2012 theft loss occurred at the Flying J Truck Stop in Clearbrook, Virginia. According to the bill of lading, Defendant's driver, Bernell Blakes Jr., was transporting 44,140 pounds of Cathode-Morenci Central PDMI, or copper sheets, on a flat-bed trailer. Defendant's driver parked his tractor trailer at the Flying J Truck Stop and then left it unattended with a key in the ignition while he went inside to shower and purchase food. The tractor trailer was not garaged in a building, was not parked in a fully enclosed yard which was securely closed and locked, was not under constant surveillance, and was not on a guarded lot. When Defendant's driver returned to the location where he parked the tractor trailer, he discovered it had been stolen. The tractor involved was recovered, but the trailer and the cargo of copper sheets remain missing. This tractor did not reflect any evidence of forcible or violent entry, and Defendant did not make any repairs to the tractor following this incident.

The July 8, 2012 theft loss occurred at a truck stop in Raphine, Virginia. According to the bill of lading, Defendant's driver, Jared Rizzo, was transporting 44,480 pounds of Cathode-Morenci Southside PDSS, or copper sheets, on a flat-bed trailer. Defendant's driver parked his tractor trailer at the truck stop and then left it unattended while he went inside to eat. The tractor trailer was not garaged in a building, was not parked in a fully enclosed yard which was securely closed and locked, was not under constant surveillance, and was not on a guarded lot. When Defendant's driver returned to the location where he parked the tractor trailer, he discovered it had been stolen. The tractor involved was recovered, but the trailer and the cargo of copper sheets remain missing. The tractor involved did not reflect any evidence of forcible or violent entry, and Defendant did not make any repairs to the tractor following this incident.

The Unattended Truck Endorsement in the Policy does not extend coverage for these losses because there was no forcible and/or violent entry to the unattended trucks and/or the trucks did not have all keys removed. Thus, coverage for these losses is excluded pursuant to exclusion k) contained in the Policy. Underwriters thus request a declaration from this Court that coverage does not exist for the losses that occurred on June 17, 2012 and July 8, 2012.

Further, question 18 of the application for coverage submitted to Underwriters for the Policy requests that Defendant give details of its cargo loss experience, whether insured or not, for the past 5 years. Defendant responded to that question as follows: "Per files with Tysers." Based upon the information contained in the application submitted, Underwriters issued Certificate number NA125383. Underwriters, after submission of the involved two claims, requested that Defendant provide additional information regarding its prior loss

history; however, Defendant refused to provide the requested information. Upon information and belief, the representation made by Defendant with regard to its prior loss history was false as it did not contain all of Defendant's cargo losses during the previous five years. Upon information and belief, the misrepresentation was made by Defendant with the intent to deceive Underwriters and increased the risk of loss. Underwriters relied upon the above misrepresentation to its detriment when it issued the Policy and would not have issued the Policy as written had the true facts been known. Underwriters are ready, willing, and hereby offer to return the premium for the policy. Because of the misrepresentations on the application, Underwriters request that the Court rescind the Policy *ab initio*.

### *Defendant's Theory:*

Defendant takes issue with the recitation of facts by Plaintiff. Defendant takes issue with the recitation of facts with regard to the circumstances of theft losses. Among other dispute issues, Defendant asserts that the units were securely locked. Defendant further takes issue with the allegations that the units were not under constant surveillance on a guarded, lighted lot within the meaning of the policy. Secondly, Defendant takes issue with the recitation that the Defendant refused to provide requested information. The application was prepared by Defendant's agent broker. Upon review, Defendant even advised the broker that there was a previous loss within the deductible omitted from the application. Furthermore, Plaintiff had coverage for Defendant for over five years and had all of the records and loss runs for all of those years. Defendant did not misrepresent anything to the Plaintiff.

Defendant asserts that Plaintiff is liable for the involved losses in that the units were under constant surveillance or on a guarded lot within the meaning of the policy and the units were securely locked. Any other interpretation of the policy would render the policy a nullity. Defendant purchased coverage for cargo theft in the ordinary course of business. Plaintiff's interpretation of the policy exclusions would enable Plaintiff to collect premiums while excluding all coverage for cargo. Plaintiff and its agent broker were well aware that Defendant provides trucking services in 48 states in an over-the-road service. The driver cannot be expected to refrain from using a restroom, short stops to eat and other short breaks. Parking a unit at a major truck stop which is under constant surveillance by the truck stop, other drivers, and the driver is within the required definitions of the policy. Any other interpretation would render the policy a nullity.

Defendant did not misrepresent any material fact to Plaintiff in making its application for coverage to Plaintiff. In fact, the application was prepared by Plaintiff's agent broker. Upon review, Defendant even advised broker that there was a previous loss omitted within the deductible. Furthermore, Plaintiff had coverage for Defendant's cargo insurance for over five years prior to the application in question. Therefore, Plaintiff had all of Defendant's loss runs and information already in its possession at the time of the application. Defendant did not make any misrepresentations to Plaintiff. Therefore, there is no grounds to rescind or return the premium.

3.  **Initial Disclosures**

    The parties shall make their Rule 26(a)(1) disclosures on or before **June 7, 2013.**

4.  **Discovery**

    The parties shall complete all written discovery, including requests for production of documents, and depose all witnesses on or before **December 4, 2013**. Discovery is not stayed during dispositive motions, unless ordered by the Court. Interrogatories, Requests for Production, and Requests for Admissions must be submitted to the opposing party in sufficient time for the opposing party to respond by the time permitted by the Rules prior to the deadline for completion of discovery.

    No deposition shall be scheduled to occur after the discovery cutoff date. Each side shall be limited to no more than five depositions, no more than 25 interrogatories, and no more than 50 requests for admission.

    Discovery-related motions, including those related to requests for production, are to be filed no later than **December 18, 2013**. No motions concerning discovery are to be filed until after the parties have conferred in good faith and are unable to resolve their differences.

    At this time, and considering the nature of the litigation, the parties do not anticipate that extensive electronic discovery will be necessary. Should the parties encounter problems regarding the discovery of electronically-stored information, the parties may file appropriate motions.

5.  **Joinder of Parties and Motions to Amend**

    All motions to amend the pleadings, including motions to add additional parties, to add additional claims, counterclaims, or cross-claims shall be filed by **October 2, 2013**.

6.  **Disclosure of Experts**

    Plaintiffs shall disclose expert witnesses, if any, no later than **September 13, 2013**. Defendant shall disclose expert witnesses, if any, no later than **October 11, 2013**. The parties shall disclose rebuttal expert witnesses, if any, no later than **November 1, 2013**. All expert witness disclosures shall be made to the opposing party and contain the information specified in Rule 26(a)(2).

7.  **Dispositive Motions**

    All dispositive motions shall be filed no later than **January 31, 2014**. Responses to dispositive motions shall be filed no later than **February 21, 2014**. Optional replies may be filed no later than **March 7, 2014**. If a dispositive motion is filed earlier, the response and reply deadlines shall be moved up accordingly.

**8.	Trial**

The jury trial is expected to last 1-2 days. The pretrial order date, pretrial conference date, and trial date will be set by the presiding judge. The parties have not consented to trial before the magistrate judge. The target trial date is June 3, 2014 (jury).

It is so ORDERED.

_____
U.S. MAGISTRATE JUDGE CLIFTON KNOWLES